UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JESSICA GRAY,

    *Plaintiff*,

v.

THE UNITED STATES OF AMERICA,

    *Defendant.*

No. 21-cv-2310 (DLF)

**MEMORANDUM OPINION**

Jessica Gray brought this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2674, alleging that she suffered permanent injury at the Thurgood Marshall Federal Judiciary Building because the government failed to maintain its property. *See* Compl. ¶¶ 1–2, 16–17, Dkt. 1. Before the Court is the government's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 11. Because the FTCA's independent contractor exception applies here, the Court will dismiss Gray's complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction.

I.      **BACKGROUND**

On May 8, 2019, Jessica Gray was employed as a Special Police Officer at the Thurgood Marshall Federal Judiciary Building in Washington, D.C. Compl. ¶ 7. Gray alleges that she tripped and fell on the defective metal floor of the guard booth where she was stationed, causing permanent injury. *Id.* ¶¶ 8, 9, 10. Gray filed an administrative claim for monetary compensation with the Office of the Architect of the Capitol (AOC) on April 12, 2021. *Id.* ¶ 11. The AOC denied Gray's claim on August 9, 2021. *Id.* ¶ 12. Gray subsequently filed this action on August 31, 2021, on the theory that her injuries resulted from the government's negligent failure to

maintain its premises in a reasonably safe condition. *Id.* ¶¶ 15–17.  The government has since moved to dismiss the case on multiple grounds, including that it is immune from suit under the FTCA's independent contractor exception.  *See* Gov't's Mem. in Supp. of Mot. to Dismiss at 5–9, Dkt. 11-1.

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of subject-matter jurisdiction in federal court. *See* Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of proving that the Court possesses jurisdiction over her claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

A defendant can attack subject-matter jurisdiction on either facial or factual grounds. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990); *see also* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004); *Macharia v. United States*, 334 F.3d 61, 67–68 (D.C. Cir. 2003).  A facial attack challenges only the legal sufficiency of the plaintiff's complaint, and the court takes the plaintiff's factual allegations as true. *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  In contrast, when a defendant mounts a factual attack on subject-matter jurisdiction, the court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Id.*  In that posture, the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.   ANALYSIS**

Sovereign immunity shields the federal government from suit and is "jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). With the FTCA, the federal government has waived its immunity as to certain torts of "employee[s] of the Government while acting within the scope of [their] office or employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976) (quoting 28 U.S.C. § 1346(b)). For this purpose, the phrase "employee of the government" includes "officers or employees of any federal agency" but specifically excludes "any contractor with the United States." 28 U.S.C. § 2671. Accordingly, courts "routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor." *Hsieh v. Consol. Eng'g Servs.*, 569 F. Supp. 2d 159, 176 (D.D.C. 2008); *see also Orleans*, 425 U.S. at 814 (recognizing the "independent contractor exception"). In such cases, the suit must be dismissed for lack of subject-matter jurisdiction.

To determine whether the independent contractor exception applies, courts evaluate the level of control that the United States exercises over the contractor. *See, e.g.*, *Hamilton v. United States*, 502 F. Supp. 3d 266, 274 (D.D.C. 2020); *Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 216 (D.D.C. 2017). The federal government may be liable for the negligence of its contractor only if the contractor's "day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815. The government may exercise some control over a contractor without transforming the contractor into a federal agent. *See id.* at 815–16. For

3

example, the government "may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia*, 334 F.3d at 68–69 (quoting *Orleans*, 425 U.S. at 816). On the other hand, "[i]f the contractor manages the daily functioning of the job, with the federal actor just exercising broad supervisory powers, the contractor is likely an independent contractor." *Hsieh*, 569 F. Supp. 2d at 176–177.

By asserting that the independent contractor exception applies here, the government has raised a factual challenge to subject-matter jurisdiction. *See Phoenix Consulting*, 216 F.3d at 40. Accordingly, this Court will resolve the motion based on Gray's "complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197. In this case, the authenticity of the government's contract is undisputed, *see* Pl.'s Opp'n at 6–7, Dkt. 13, but the parties disagree whether its terms trigger the independent contractor exception. Courts in this circuit regularly analyze government contracts to determine if the independent contractor exception applies, *see, e.g.*, *Hamilton*, 502 F. Supp. 3d at 275; *Verizon Washington*, 254 F. Supp. 3d at 211, and the Court will likewise do so here.

The plain terms of the government's contract with Complete Building Services (CBS) demonstrate that CBS was an independent contractor responsible for the act or omission at the heart of Gray's complaint. *See* Gov't's Mot. Ex. 1, Dkt. 11-2. The contract explicitly states that CBS was to "properly maintain Government property," including "identification . . . and performance of normal and routine preventative maintenance and repair." *Id.* at 66. Even more specifically, the Statement of Work incorporated into the contract states that CBS will "provide Architectural + Structural Maintenance" and "repair" the "[g]uard booths." Gov't's Mot. Ex. 2 (Statement of Work) at 55–56, Dkt. 11-3. From there, it defines "architectural and structural" maintenance as "repair and replacement of . . . floor coverings." *Id.* at 55. Moreover, the

government did not provide day-to-day supervision of CBS, but designated that CBS "provide *all* management, *supervision*, labor, materials, supplies, repair parts, tools, and equipment necessary for the overall property management responsibilities of the [Thurgood Marshall Building]." *Id.* at 30 (emphasis added).  This language makes abundantly clear that CBS was delegated the duty to maintain and repair the metal floor coverings of the building's guard booths.

Gray has failed to show that CBS was not responsible for maintaining the booths' interior metal floor coverings.  Gray contends that only the exterior maintenance of the booths was delegated to CBS because the "[g]uard booths" are listed as "exterior items" rather than "interior items" in the Statement of Work.  *See* Pl.'s Opp'n at 7.  However, a natural reading of the Statement of Work confirms that the guard booths are listed as "exterior items" because they are physically located on the exterior of the main Thurgood Marshall Building, not because they require only exterior maintenance.  This reading is confirmed by the Statement of Work's specification that CBS would provide "architectural and structural" maintenance, which included "repair and replacement of . . . floor coverings," for both "interior and exterior items." Statement of Work at 55–56.  Gray fails to present any other evidence that CBS was responsible for maintaining only the exterior of the booths.

The Court is also unpersuaded that CBS was responsible for maintaining only the HVAC system on the guard booth's roof.  In arguing to the contrary, Gray relies on a letter from CBS's insurer, Travelers Insurance.  *See* Pl.'s Opp'n Ex. B (Travelers Insurance Letter), Dkt. 13-2.  That letter states that the government and CBS had a "Service Agreement" that "includes the maintenance service of the HVAC system located on the roof top of the involved security booth," while "any additional service and/or repair needed" would require the government to "submit [a] repair service request to CBS." *Id.* at 1.  But Gray does not present a copy of the referenced

"Service Agreement." *See generally* Dkt. 13.  In addition, the plain terms of the CBS contract and incorporated Statement of Work require CBS to provide full architectural and structural maintenance for the guard booths.  *See* Statement of Work at 55–56.  Finally, the letter does not provide direct evidence of CBS's responsibilities, but instead only summarizes the "position" of a third-party insurer after the completion of its unspecified "investigation."  Travelers Insurance Letter at 1.  The letter accordingly provides no support for Gray's argument.

Finally, the Court is unpersuaded that the government had the primary duty to maintain the guard booths simply because the contract allows the government to submit work requests to CBS, *see* Pl.'s Opp'n at 7.  The fact that the contract empowered the government to request work from CBS does not demonstrate that the government had a duty to take the lead in this area.  For one, the Statement of Work specifically contemplates that CBS can initiate repairs as well.  *See* Statement of Work at 55 (referring to "repair[s] requested by the Contractor").  Moreover, the contract plainly states that "[t]he Contractor shall provide *all* . . . management [and] supervision . . . necessary for the overall property management responsibilities of the [Thurgood Marshall Building]."  Statement of Work at 30 (emphasis added).  In *Verizon Washington*, the court similarly held that the independent contractor exception applied where the government delegated "all . . . supervision" of maintenance and repair work to the independent contractor under similar contractual provisions, even though the contract called for "close coordination" between the government and contractor on requesting and prioritizing repairs.  254 F. Supp. 3d at 216–17.  Gray has pointed to no other contract provision indicating that the government had the primary duty to inspect and maintain the guard booths.

For those reasons, Gray has failed to show that the independent contractor exception does not apply.  This Court will accordingly dismiss this case for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss, Dkt. 11, is granted. A separate order consistent with this decision accompanies this memorandum opinion.

								_____
								DABNEY L. FRIEDRICH
								United States District Judge

August 30, 2022